IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES LEE MULVIHILL, §
TDCJ-CID NO. 1233480, §
　　　　　　　　　　　　　　　　§
　　　　　Petitioner, §
　　　　　　　　　　　　　　　　§
v. §
　　　　　　　　　　　　　　　　§　CIVIL ACTION NO. H-11-3367
RICK THALER, Director, Texas §
Department of Criminal Justice, §
Correctional Institutions §
Division, §
　　　　　　　　　　　　　　　　§
　　　　　Respondent. §

**MEMORANDUM OPINION AND ORDER**

James Lee Mulvihill, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1) challenging a criminal conviction in state court. The Respondent has filed a Motion for Summary Judgment with Brief in Support ("Motion for Summary Judgment") (Docket Entry No. 11) and has submitted Mulvihill's state court records. After reviewing the pleadings and the records, the court has determined that the motion should be granted.

**I.  Procedural History**

A jury convicted Mulvihill of aggravated sexual assault of a child and sentenced him to twenty years in prison. State v.

Mulvihill, No. 963455 (262nd Dist. Ct., Harris County, Tex., Apr. 24, 2004). Mulvihill appealed the judgment, which was affirmed by the Court of Appeals for the First District of Texas. Mulvihill v. State, 177 S.W.3d 409 (Tex. App. -- Houston [1st Dist.] 2005, pet. ref'd). The Texas Court of Criminal Appeals refused Mulvihill's petition for discretionary review on December 14, 2005. Mulvihill v. State, No. PD-746-05.

Mulvihill filed a state Application for a Writ of Habeas Corpus challenging his conviction on March 12, 2007 (Docket Entry No. 15-1, pp. 6-14). The Texas Court denied the application in a written order on September 14, 2011. Ex parte Mulvihill, No. 74,850-01, 2011 WL 4072245 (Tex. Crim. App. 2011). Mulvihill filed the instant habeas Petition with this court on September 14, 2011.

## II.  Facts Established at Trial

The court finds that the following excerpt from the opinion issued by the Court of Appeals would be useful in evaluating the Petition and the Motion for Summary Judgment:

> Paula Johnson, the complainant's mother, testified that she and appellant married in 1981 and that they subsequently had two daughters, the complainant and her older sister. In August 2000, due to marital difficulties, Johnson and appellant separated, and Johnson, the complainant, and the older sister moved into an apartment. Johnson explained that, before the middle of the complainant's sixth-grade year, in early 2001, the complainant had been a "good," "sweet," and "[h]appy, lovable child." However, in early 2001, the complainant had adopted a "tough-girl type exterior." Johnson had also noticed other changes in the complainant. Johnson

-2-

was notified twice by the complainant's school that the complainant had told other students that she was going to commit suicide. The complainant also began telling lies, including telling neighbors that appellant had died of a heart attack. Furthermore, the complainant also consumed Xanax bars that other students had given to her.

Johnson further testified that, in June 2003, after Johnson picked up the complainant from the house of Cathy Lookofsky, appellant's sister, the complainant first told her that appellant had been touching the complainant inappropriately. About two weeks later, Johnson reported the information to the Baytown Police Department. She then placed the complainant in counseling with Dene Edmiston, a counselor at the New Horizons Center in Baytown, Texas, where the complainant was still receiving counseling at the time of trial.

The complainant testified that, on February 14, 2001, when she was 12 years old, she spent the night at appellant's house. After she fell asleep, she was awakened when she felt appellant digitally penetrate her vagina. Appellant told her not to "tell anybody because [he] could go to jail." The next morning, while appellant was driving the complainant back to Johnson's apartment, appellant told her that if she "ever walked out of [his] life, that his life would be over right there." Two weeks later, the complainant moved in with appellant, who touched her in a similar manner between two and ten times until the complainant moved back to Johnson's apartment on March 31, 2001. However, in July 2001, after Johnson's and appellant's divorce was finalized, pursuant to a standard possession order, the complainant began visiting appellant every other weekend and on holidays. She explained that her visits with appellant were "good for a while," but then appellant again began entering her bedroom at night and digitally penetrating her vagina. He continued to touch her in such a manner during every weekend visit until appellant left the country in April or May of 2002. The complainant explained that, after each time appellant touched the complainant, while driving the complainant back to Johnson's house, appellant would cry and tell the complainant that he loved her, that he wanted her to live with him, and that he did not want her to leave him. She also explained that appellant's behavior made her feel guilty and "bad" and that she did not immediately tell anyone what had happened because she "didn't want [appellant] to go to jail." In June 2003, shortly before

appellant returned to the United States, the complainant first told Lookofsky and then told Johnson that appellant had been touching her inappropriately.

<u>Mulvihill v. State</u>, 177 S.W.3d at 410-11.

### III. <u>Mulvihill's Grounds for Relief</u>

Mulvihill asserts the following grounds for relief in his Petition (Docket Entry No. 1, pp. 7(a)-7(e)):

1. Mulvihill is actually innocent of the charges for which he was convicted;

2. Mulvihill received ineffective assistance of counsel because his trial attorney, Steven "Rocket" Rosen:

   a. erroneously advised Mulvihill not to testify at the guilt-innocence stage of the trial based on his misunderstanding regarding admissibility of evidence of extraneous bad acts;

   b. instructed Mulvihill to admit committing the offense when he testified at the punishment stage;

   c. failed to secure a new trial because he did not personally obtain an affidavit from the complainant recanting her testimony against Mulvihill; and

   d. did not call a witness to testify that the complainant admitted that her testimony was false;

and

3. The State withheld exculpatory evidence.

Docket Entry No. 1, pp. 7(a)-7(e).

In his response (Docket Entry No. 18, pp. 1 and 2), Mulvihill withdrew Ground 1 (actual innocence), Ground 3 (State withheld exculpatory evidence), and Grounds 2.b., 2.c., and 2.d. (in support

-4-

of his ineffective assistance of counsel claim). Therefore, the court shall only consider the merits of the remaining claim, Ground 2.a, which alleges that Rosen was ineffective for advising Mulvihill to not testify during the guilt phase of the trial.

### IV. Standard of Review and Applicable Laws

Mulvihill's Petition is subject to review under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254; Woods v. Cockrell, 307 F.3d 353, 356 (5th Cir. 2002); Nobles v. Johnson, 127 F.3d 409, 413 (5th Cir. 1997), citing Lindh v. Murphy, 117 S.Ct. 2059, 2068 (1997). A federal habeas petitioner challenging a state court decision is not entitled to relief unless the state court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, 28 U.S.C. § 2254(d)(1); or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials,' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 122 S.Ct. 1843, 1849 (2002), citing Williams v. Taylor, 120 S.Ct. 1495, 1518 (2000). Habeas relief should only be granted if the state court decision is both incorrect and objectively unreasonable.

Martin v. Cain, 246 F.3d 471, 476 (5th Cir. 2001), citing Williams, at 1521. State court rulings must be accorded wide latitude under AEDPA review. Wilson v. Cain, 641 F.3d 96, 100 (5th Cir. 2011), citing Harrington v. Richter, 131 S.Ct. 770, 785 (2011); Premo v. Moore, 131 S.Ct. 733, 743 (2011); Renico v. Lett, 130 S.Ct. 1855, 1862-66 (2010); Thaler v. Haynes, 130 S.Ct. 1171, 1173-75 (2010). "[A] federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision." Pondexter v. Dretke, 346 F.3d 142, 148 (5th Cir. 2003), quoting Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). Claims that have been reviewed in the state courts should not be relitigated in the federal habeas proceedings; federal habeas relief is available only where there have been "extreme malfunctions in the state criminal justice systems." Wilson, 641 F.3d at 100, quoting Harrington, 131 S.Ct. at 786.

### V. Analysis

The only contested issue in this case is whether Rosen was ineffective in counseling Mulvihill not to testify during the guilt phase of his trial. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in Strickland v. Washington, 104 S.Ct. 2052 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient

performance. Id. at 2064. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. Green v. Johnson, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. Strickland, 104 S.Ct. at 2064. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that the trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. West v. Johnson, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption a petitioner must identify the acts or omissions of counsel that were not the result of reasonable professional judgment. Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Skinner v. Quarterman, 528 F.3d 336, 341 (5th Cir. 2008), quoting Cotton v. Cockrell, 343 F.3d 746, 752-53 (5th Cir. 2003). See also Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997) ("The failure to present [mitigating] evidence would not constitute 'deficient' performance within the meaning of Strickland if [the attorney] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.").

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment in a criminal case if the error had no effect on the judgment. Strickland, 104 S.Ct. at 2066. Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 2068. The issue of prejudice focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993). Unreliability or unfair-ness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. Id.

Mulvihill testified at a state habeas hearing on May 18, 2010 (Docket Entry No. 15-5). Under cross-examination by the State, he admitted that he had been fired from the Baytown Police Department for sexual harassment and that he had been viewing pornography while on duty (Docket Entry No. 15-5, pp. 64-65). Mulvihill also conceded that his other daughter, Nicole, had accused him of attempting to molest her sexually. Id. at 66.

Extraneous acts and unadjudicated offenses are generally not admissible at a criminal trial to prove conformity with a charged offense. Daggett v. State, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005). However, if a defendant testifies to his good character and makes a broad statement such as, "I would never have sex with a

minor," evidence of prior bad acts may be admissible to impeach his testimony. Id. Mulvihill admitted during the state habeas hearing, "[t]hat [it] was not an uncommon occurrence for me to unsnap them [sic] girls' bras." (Docket Entry No. 15-5, p. 71 lines 10-11) He also agreed that evidence of his unzipping Nicole's dress, unhooking her bra, and feeling her breasts "could have inflamed the jury[.]" Id. at 73. Mulvihill also acknowledged extramarital affairs and an illegitimate child. Id. at 75. Mulvihill stated that he discussed these matters with Rosen before trial and, after some hesitation, admitted that he was aware that his past sexual behavior could have come out if he had testified at the trial's guilt-innocence phase. Id. at 75-78. He also agreed that some of the information would have been harmful to his defense. Id. at 78. Moreover, the prosecution gave a clear indication of its intent to use Mulvihill's past acts against him if given the chance. See Notice of Intention to Use Extraneous Offenses and Prior Convictions, Docket Entry No. 12-28, pp. 39-59.

The state habeas court made extensive findings of fact in response to this claim (e.g., Findings of Fact Nos. 73, 74, 75, 78, and 79)[1] and concluded (1) that "[Mulvihill's] proffered testimony

---

[1] Ex parte Mulvihill, Cause No. 963455-A, State's Proposed Findings of Fact, Conclusions of Law and Order ("Findings and Conclusions"), Document 13-5, pp. 58-60. Page citations to state court Findings and Conclusions are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document.

would likely have opened the door to otherwise inadmissible evidence of [Mulvihill's] extraneous offenses and bad acts" (Conclusion of Law 3; Conclusions of Law 5, 6, and 7 reiterate this finding);[2] (2) that "[b]ecause counsel's decision to advise [Mulvihill] not to testify during the guilt stage of [the] trial was based on a thorough investigation, was reasonable and had a plausible basis, [Mulvihill] fails to show that he was denied the effective assistance of counsel in this regard" (Conclusion of Law 4);[3] (3) that Rosen's advice therefore did not harm Mulvihill (Conclusion of Law 6);[4] (4) that Mulvihill "cannot show that there is a reasonable likelihood that he would have been found not guilty had he decided to testify during the guilt stage of trial" (Conclusion of Law 7);[5] and (5) that "[t]he totality of the representation afforded [Mulvihill] was sufficient to protect [Mulvihill's] right to reasonably effective assistance of counsel (Conclusion of Law 16).[6]

Rosen's advice to Mulvihill not to testify during the guilt phase of the trial was a matter of strategy that is usually not subject to review under Strickland. See Winfrey v. Maggio, 664

---

[2] Id. at 64 and 65.

[3] Id. at 64.

[4] Id. at 65.

[5] Id. at 65.

[6] Id. at 67.

F.2d 550, 553 (5th Cir. 1981). Although it is possible that with some preparation Mulvihill may have been able to avoid "opening the door" to questions about his past, Rosen could not have been certain that Mulvihill could navigate the traps and pitfalls inherent in a rigorous cross-examination. See Jasper v. Thaler, 466 F. App'x 429, 439 (5th Cir. 2012), citing United States v. Fields, 565 F.3d 290, 295 (5th Cir. 2009) ("Clairvoyance is not a required attribute of effective representation.").[7] Any misgiving Rosen may have had about Mulvihill's reliability as a witness would have justified his advice that Mulvihill should not testify. See, e.g., Burger v. Kemp, 107 S.Ct. 3114, 3124-25 (1987) (failure to introduce character evidence was effective performance because witnesses could have been subjected to harmful cross-examination, which might have produced harmful testimony); Darden v. Wainwright, 106 S.Ct. 2464, 2474 (1986) (same); Strickland, 104 S.Ct. 2052, 2057 (1984) (counsel chose not to have defendant testify to avoid cross-examination by the prosecution and submission of psychiatric

---

[7]Rosen could have concluded that Mulvihill could not be relied upon to follow his advice regarding testimony.  Mulvihill's performance as a witness during the punishment stage of the trial would support such a conclusion.  Rosen's strategy during the punishment phase was to seek probation by having Mulvihill admit his guilt to the jury and state that he needed help with his problem.  See Writ Hearing Transcript (Docket Entry No. 15-5, p. 54).  Rosen would then argue that Mulvihill could be helped by probation.  Instead, Mulvihill testified several times during the punishment phase that he never touched his daughter.  Id. at 59. In other words, Mulvihill failed to heed Rosen's instructions to accept responsibility for the act for which the jury had already found him guilty.

records by the state). Consequently, Mulvihill has failed to show that Rosen's advice was so erroneous as to constitute deficient performance denying Mulvihill effective counsel in violation of the Sixth Amendment. <u>Strickland</u>, 104 S.Ct. at 2064.

Because Mulvihill has not shown that Rosen's performance was deficient, it is not necessary to decide whether the absence of Mulvihill's testimony during the guilt phase of the trial caused Mulvihill actual prejudice. See <u>Sayre v. Anderson</u>, 238 F.3d 631, 635 (5th Cir. 2001); <u>Amos v. Scott</u>, 61 F.3d 333, 348 (5th Cir. 1995). If prejudice is considered, Mulvihill has the burden of proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Nixon v. Epps</u>, 405 F.3d 318, 324 (5th Cir. 2005), <u>quoting</u> <u>Strickland</u>, 104 S.Ct. at 2068. Mulvihill has not shown that the outcome of his trial would have been different if he had testified during the guilt phase. Mulvihill has therefore failed to show that his failure to testify prejudiced his defense.

Mulvihill has not identified any Supreme Court decision that supports his argument that Rosen was ineffective in counseling him not to testify during the guilt stage of his trial. He attempts to find fault with the state court's written opinion; however, the opinion is not subject to review in a federal habeas proceeding. <u>Pondexter v. Quarterman</u>, 537 F.3d 511, 522 (5th Cir. 2008), <u>citing</u> <u>Pondexter</u>, 346 F.3d at 147-48. The state court's adjudication of the claim was not a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Nor has Mulvihill shown that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

This court will grant the Motion for Summary Judgment and will dismiss the Petition filed in this action because Mulvihill has failed to demonstrate that he is entitled to federal habeas relief.

## VI. Certificate of Appealability

Under 28 U.S.C. § 2253, Mulvihill needs to obtain a certificate of appealability before he can appeal this Memorandum Opinion and Order dismissing his Petition. To obtain a certificate of appealability, Mulvihill must make a substantial showing of the denial of a constitutional right. Williams v. Puckett, 283 F.3d 272, 276 (5th Cir. 2002). To make such a showing Mulvihill must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. Lucas v. Johnson, 132 F.3d 1069, 1073 (5th Cir. 1998). For the reasons stated in this Memorandum Opinion and Order, Mulvihill has not made a substantial showing of the denial of a constitutional right. Newby v. Johnson, 81 F.3d 567, 569 (5th Cir. 1996). The court will therefore deny a certificate of appealability in this action.

## VII. Conclusion

The court **ORDERS** the following:

1. Respondent's Motion for Summary Judgment (Docket Entry No. 11) is **GRANTED**.

2. The Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DISMISSED WITH PREJUDICE**.

3. A Certificate of Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this 22nd day of August, 2012.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE